NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NORRIS H. YOUNG, | : | Civil Action No. 17-5754 (JMV) |
| Petitioner, | : |  |
| v. | : | **OPINION** |
| SHERRY YATES,[1] | : |  |
| Respondent. | : |  |

**VAZQUEZ, District Judge:**

Petitioner is a sexually violent predator ("SVP") civilly committed at the Special Treatment Unit at the Adult Diagnostic and Treatment Center in Avenel, New Jersey, pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J. Stat. § 30:4-27.24, *et seq*. He is proceeding *pro se* with an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereinafter "Petition"). (D.E. 3.) For the reasons explained in this Opinion, the Court will deny the Petition and will not issue a certificate of appealability.

**I.    BACKGROUND**

The New Jersey Superior Court, Appellate Division, summarized the underlying factual circumstances of this case, on direct appeal of one of the orders extending Petitioner's civil commitment:

> On January 19, 2000, the State filed a petition for the involuntary civil commitment of N.H.Y. pursuant to the SVPA. At

---

[1] The proper respondent in an action under 28 U.S.C. § 2254 is the warden or administrator of the facility currently housing the petitioner. In this case, the proper Respondent is Sherry Yates, the administrator of the Adult Diagnostic and Treatment Center. The Court will dismiss with prejudice the other named Respondents.

> that time, the State also sought his temporary commitment to the
> STU. The predicate offense for which the temporary commitment
> was sought stemmed from his July 3, 1985 conviction for one count
> of criminal sexual contact of a female and one count of aggravated
> sexual assault, N.J.S.A. 2C:14-2(a)(4), at knifepoint upon another
> fifteen-year-old female. He was sentenced to a twenty-year prison
> term. In July 2000, following a hearing, the court entered judgment
> declaring that N.H.Y. was a sexually violent predator in need of
> involuntary commitment to a secure facility for control, care and
> treatment.
>
> . . . .
>
> Dr. Dean DeCrisce, a psychiatrist, and Dr. Jamie Canataro, a
> psychologist, testified for the State. No witnesses testified on behalf
> of N.H.Y. The parties stipulated to both doctors' qualifications and,
> subject to one correction in Dr. Canataro's report and certain
> hearsay objections, the reports of both doctors were also admitted
> into evidence without further objection.
>
> . . . .
>
> Dr. DeCrisce diagnosed N.H.Y. as suffering, under AXIS I, from
> frotteurism, exhibitionism, and paraphilia. Under AXIS II, he
> diagnosed N.H.Y. as having an antisocial personality disorder. Dr.
> DeCrise opined that there was a very high risk that he would re-
> offend based upon N.H.Y.'s history of multiple sexual victims,
> "noncontact offenses, stranger victims, violent offenses, antisocial
> personality disorder, substance abuse, offenses after prior
> incarceration, early age of offending behavior, poor premorbid
> social functioning and potentially prior treatment dropout." In his
> opinion, N.H.Y. had not mitigated the risk factors through treatment
> efforts.

*In re Civ. Commitment of N.H.Y.*, No. A-0042-08T2, 2009 WL 102889, at *2–3 (N.J. Super. Ct. App. Div. Jan. 16, 2009). Since 2000, the state courts issued a number of orders continuing Petitioner's civil commitment. *Id*. Ultimately, Judge Philip M. Freedman issued the 2014 continued commitment order which gave rise to the instant case. (D.E. 14-21; D.E. 14-22.)

On direct appeal of that 2014 order, the Appellate Division summarized the remaining background as follows:

N.H.Y. was scheduled for an annual review hearing in November 2014 before Judge Philip M. Freedman. Prior to the hearing, N.H.Y. filed a *pro se* motion arguing the SVPA was unconstitutional under both the United States and New Jersey Constitutions. N.H.Y. *informed the judge that he wished to argue only the constitutionality of the statute, not whether he should be committed pursuant to same.* Judge Freedman denied N.H.Y.'s motion, explaining the statute's constitutionality had already been established by both the United States Supreme Court and the New Jersey Supreme Court.

N.H.Y. then consented to the entry into evidence of the State's exhibits and disposition on the papers, asking the judge to "make a ruling on this case on the papers without the doctors for the state needing to testify." Judge Freedman explained that he would "read the two reports as if they were testifying, and then [he would] read the treatment notes, and [then] decide the case." Judge Freedman further explained that because the State provided two expert reports which recommended recommitment and N.H.Y. provided no report, it would be "extremely difficult" to rule in N.H.Y.'s favor.

On November 21, 2014, Judge Freedman entered an order that N.H.Y. was still in need of commitment. That same day, the judge rendered a very thorough oral decision in which he reviewed the history of N.H.Y.'s commitment and the predicate offenses, as well as the evidence adduced at earlier hearings that led to the continuation of commitment, the current expert reports as to N.H.Y.'s mental health and their recommendations for continued commitment, as well as the reports of his progress in institutional programs. After noting the evidence he considered was uncontroverted by N.H.Y. who produced no witnesses or other evidence, and reviewing the statutes and case law governing such matters, the judge stated:

Clearly [N.H.Y.] suffers from mental abnormalities and a serious personality disorder, scored in the high range of psychopathy, and that they affect him clearly volitionally and—and emotionally and cognitively as well. And they, as his record shows, predispose him to engage in acts of sexual violence to such a degree that I find that he would have serious difficulty controlling his sexually violent behavior and would be highly likely within the reasonably foreseeable future to engage in acts of sexual violence. I make all those findings by clear and convincing evidence.

*Matter of Civ. Commitment of N.H.Y.*, No. A-2729-14T2, 2016 WL 5956021, at *1–2 (N.J. Super. Ct. App. Div. Oct. 14, 2016) (emphasis added). Ultimately, the Appellate Division affirmed for

substantially the same reasons set forth in Judge Freedman's oral decision. *Id*. at *2. Petitioner appealed that decision, and the Supreme Court of New Jersey denied certification on July 5, 2017. *Matter of Civ. Commitment of N.H.Y.*, 170 A.3d 322 (N.J. 2017).

Petitioner filed his initial § 2254 petition in August of 2017, (D.E. 1.), and filed the instant Petition in October of 2017, (D.E. 3.). Respondent filed an Answer, (D.E. 14.), and Petitioner filed a Reply, (D.E. 21.). In his Petition, Petitioner does not appear to challenge the merits of his 2014 continued civil commitment order. (D.E. 3.) Instead, like his arguments before the state courts, it appears that Petitioner only wishes to challenge the constitutionality of the SVPA. *Id*.; *see N.H.Y.*, 2016 WL 5956021, at *1 ("N.H.Y. informed the judge that he wished to argue only the constitutionality of the statute, not whether he should be committed pursuant to same.").

To that end, Petitioner raises the following claims[2] in this case:

1. The SVPA violates the Equal Protection and Due Process clauses of the Fourteenth Amendment.

    a. The SVPA "created a Suspect Class" and subjected Petitioner "to discrimination by arbitrarily determining that only certain individuals . . . of [the sex offender class were] subject to civil commitment while other similarly situated offenders were not subject to the same standard." (D.E. 3, at 4, 7–8.)

    b. The SVPA "arbitrarily distinguishes between members of a similarly situated class," and there is no rational basis for treating some sex offenders differently from others. (*Id*. at 6.)

2. The SVPA is a bill of attainder in violation of Article I, Section 9, Clause 3 of the United States Constitution. (*Id*. at 9.)

3. The SVPA is a "Special law that violates" Article IV, Section 7, Paragraph 9, of the New Jersey State Constitution. (*Id*. at 11.)

---

[2] The Petition lists four grounds, but grounds one and two appear to be alternative arguments to an equal protection claim.

## III. STANDARD OF REVIEW

Section 2254(a) permits a court to entertain claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners have the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas cases must give considerable deference to the determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, AEDPA deference applies even when there has been a summary denial. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))). "Under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (internal quotation marks

5

omitted). As to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen*, 563 U.S. at 180–81.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing

6

of "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

IV. ANALYSIS

A. Equal Protection and Due Process Claims

First, Petitioner contends that the SVPA violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution. (D.E. 3, at 6–8.) On habeas review, a district court must review the last reasoned state court decision on each claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on direct appeal of Petitioner's 2014 continued civil commitment order. *N.H.Y.*, 2016 WL 5956021, at *2. The Appellate Division affirmed for substantially the same reasons set forth in Judge Freeman's oral decision, which are as follows:

> RESPONDENT: Because the statute states that anyone, anyone convicted of any offense enumerated under the SVP . . . my argument is, under that statute and class legislation saying that the legislature cannot make the distinguishing (indiscernible) members of the same class, individuals who are similarly situated, how did the legislature determine that certain individuals who commit sex offenses must be civilly committed while others are not.
>
> THE COURT: Because they set up a criteria to do that. And . . . that's been approved by the Supreme Court.
>
> . . . .
>
> THE COURT: You can commit . . . a rape, for example, and not have a paraphilia or - - well, let's say, for example, you're . . . a college student, you're 20 years old, you go out with a girl, you go

7

> home to the room, you're both in the bed and you're naked, and you're making out, now he wants to have intercourse and she says no, but he does it anyway that's a rape.
>
> THE RESPONDENT: Yes.
>
> THE COURT: All right. But that's not a paraphilic rape. You know, . . . no one's going to say he has a paraphilia. Let's assume he doesn't have any personality disorders either. So that he, while he has committed . . . an offense, could be sent to prison for it, he can't be committed, because he doesn't meet the criteria.
>
> So they've set up a separate section of the mental health law for the protection of the public and/or the individual himself. That's been the longstanding law in New Jersey that they can do that going back to *State versus Krol* and *State versus Fields*, . . . so, I'm denying your motion.

(D.E. 14-21, at 9:4 to 10:21.); *N.H.Y.*, 2016 WL 5956021, at *2.

Here, the state court's decision was not an unreasonable application of clearly established federal law. Although Petitioner refers to Supreme Court rulings for general principles in § 2254 cases, he fails to argue that the state court unreasonably applied any particular Supreme Court case. (D.E. 3; D.E. 21.) Indeed, he acknowledges that his SVPA hearing Judge, "[d]enied the motion based on previous U.S. Supreme Court precedent, such as *Kansas v. Hendricks* 521 U.S. 346 (1997) [and] *Kansas v. Crane*, 534 U.S. [407] (2002)." (D.E. 21, at 9.) Instead, he argues that his claims are "not germane" to "the issues raised in previous constitutional adjudications." (*Id.*)

Under the Equal Protection clause, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'" *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (emphasis in original) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)).

The level of scrutiny necessary "differs depending on the nature of the classification." *Id*. "Classifications involving suspect or quasi–suspect class, or impacting certain fundamental constitutional rights, are subject to heightened scrutiny." *Id*. (citing *Cleburne*, 473 U.S. at 439). For example, classifications involving "suspect distinctions such as race, religion, or alienage" are subject to heightened scrutiny. *Cabrera v. Att'y Gen. United States*, 921 F.3d 401, 404 (3d Cir. 2019). "Other classifications, however, need only be rationally related to a legitimate government goal." *Artway*, 81 F.3d at 1267 (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

### 1. Suspect Class

Petitioner appears to argue that he is a member of a suspect class because the SVPA allows for the involuntary civil commitment of some but not all sex offenders with qualifying convictions. (D.E. 3, at 7–8.) In other words, Petitioner argues that the category of sex offenders eligible for civil commitment under the SVPA is a "suspect class," and that the Court should apply heightened scrutiny to that classification. The Court disagrees.

The Third Circuit and this Court have long held that "sex offenders, compulsive and repetitive or otherwise are neither suspect nor quasi-suspect classes under the Equal Protection Clause." *L.A. v. Hoffman*, 144 F. Supp. 3d 649, 673–74 (D.N.J. 2015) (citing *Artway*, 81 F.3d at 1267); *Alves v. Ferguson*, No. 01-789, 2003 WL 27376297, at *6 (D.N.J. Nov. 18, 2003); *see also B.K. v. Grewal*, No. 19-05587, 2020 WL 5627231, at *7–8 (D.N.J. Sept. 21, 2020). It further appears that every Circuit Court of Appeals that has addressed this issue has held that sex offenders are not a suspect class. *See, e.g.*, *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 354 (5th Cir. 2017); *Varner v. Monohan*, 460 F.3d 861, 865 (7th Cir. 2006); *Doe v. Moore,* 410 F.3d 1337, 1342–48 (11th Cir. 2005); *United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir.

2001); *Cutshall v. Sundquist*, 193 F.3d 466, 482–83 (6th Cir. 1999); *Roe v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999).

Similarly, courts have held that sub-classifications of sex offenders are not considered a suspect class, unless that sub-classification itself implicates a suspect class. *See Artway*, 81 F.3d at 1267 (addressing compulsive and repetitive sex offenders); *B.K.*, 2020 WL 5627231, at *7–8 (addressing sex offenders subject to Megan's Law versus those who are not), *see also Duarte*, 858 F.3d at 354 (addressing the "differing treatment of child sex offenders subject to state-imposed community supervision versus those who are not"); *Moore*, 410 F.3d at 1346 (addressing subclasses "based on parental relationship to victim, status of offender as a minor, insanity or civil commitment of the offender, and release of offender from supervision prior to enactment of the statute").

In sum, Petitioner's challenged subclassification—sex offenders who are subject to civil commitment under the SVPA—is not a suspect class. *See Alves*, 2003 WL 27376297, at *6. The SVPA permits civil commitment for sex offenders if they suffer from "a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J. Stat. § 30:4-27.26. "Classification according to mental illness is not recognized as a suspect class." *Alves*, 2003 WL 27376297, at *6 (citing *Doe v. Colautti*, 592 F.2d 704, 710–11 (3d Cir. 1979)); *Johnson v. Wenerowicz*, No. 10-5027, 2011 WL 1399809, at *7 (E.D. Pa. Apr. 8, 2011). Unlike suspect classes such as race or national origin, mental illness is not "an immutable characteristic based solely upon the accident of birth." *Wenerowicz*, 2011 WL 1399809, at *7. Indeed, a key feature of the SVPA is annual review "to determine whether the person remains in need of commitment despite treatment." *N.H.Y.*, 2016 WL 5956021, at *1 (citing N.J. Stat. § 30:4-27.35, 27.32(a)).

Stated differently, a premise of the SVPA is that one's eligibility for civil commitment is mutable, *i.e.*, subject to change. Additionally, unlike suspect classes that "frequently bear[] no relation to [one's] ability to perform or contribute to society," mental abnormalities or disorders that make a person likely to engage in acts of sexual violence have a significant bearing on one's ability to perform or contribute society. *See* N.J. Stat. § 30:4–27.25 (listing legislative findings); *Cleburne*, 473 U.S. at 441.

For all of those reasons, the challenged category—sex offenders who are eligible for civil commitment under the SVPA—is not a suspect class and "does not impact any fundamental rights." *See Artway*, 81 F.3d at 1267. Accordingly, this Court must presume that the SVPA is valid and sustain the classification if "the statute is rationally related to a legitimate state interest." *Id*.

### 2. Rational Basis Scrutiny

A statute will survive rational basis review, "if the state identifies a legitimate state interest" and could rationally conclude that the statute served that interest. *See, e.g.*, *Sammon v. N.J. Bd. of Medical Exam'rs*, 66 F.3d 639, 644 (3d Cir. 1995). The statute, however, does not need to be consistent in every respect "with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Hoffman*, 144 F. Supp. 3d at 674–75 (quoting *Rogin v. Bensalem Township*, 616 F.2d 680, 689 (3d Cir. 1980)). When engaging in rational basis review, courts should not "second guess the legislature on the factual assumptions or policy considerations underlying the statute." *Sammon*, 66 F.3d at 645. The Third Circuit has cautioned that "[i]f the legislature has assumed that . . . [the statute] will serve the desired goal, the court is not authorized to determine . . . . whether the desired goal has been served." *Id*. Courts must "accept a legislature's generalizations even when there is an imperfect fit between means and ends," and a classification

11

will not fail merely "because in practice it results in some inequality." *Heller v. Doe*, 509 U.S. 312, 319–20 (1993) (internal quotation marks omitted). Instead, the only question is "whether the legislature rationally might have believed . . . that the desired end would be served." *Sammon*, 66 F.3d at 645.

Consequently, to successfully challenge legislation subject to rational basis review, the challengers "must convince the court that the legislative facts" which form the basis of the classification, "could not reasonably be conceived as true by the governmental decisionmaker." *Id.* (quoting *Vance v. Bradley*, 440 U.S. 93, 111 (1979)). Indeed, "those attacking the rationality of the legislative classification have the burden to negate every conceivable basis which might support it." *Hoffman*, 144 F. Supp. 3d at 675 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)) (internal quotation marks omitted). Ordinarily, this task is "insurmountable." *Id*.

At the outset, the Court finds that the alleged classes at issue - (1) sex offenders who are eligible for civil commitment under the SVPA, and (2) sex offenders who are *not* eligible for civil commitment under the SVPA - are not similarly situated. "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in *all* relevant aspects.'" *Castaneira v. Potteiger*, 621 F. App'x 116, 121 (3d Cir. 2015) (emphasis in original) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)). As discussed, the SVPA permits civil commitment for sex offenders if they suffer from "a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J. Stat. § 30:4-27.26. Consequently, the members of one group each possess one or more mental conditions that make them likely to engage in sexual violence, while members of the other do not. Instead, the two groups are different in the most critical aspect of the statute. The New Jersey Legislature determined that persons who possess these

characteristics are a danger to the public and deemed it necessary to commit these individuals for treatment in order to protect the public from sex offenses. N.J. Stat. § 30:4–27.25 (listing legislative findings). Accordingly, the challenged groups in this case are not similarly situated, and the Court will deny Petitioner's equal protection claim.

That said, assuming *arguendo* that the challenged groups are similarly situated, the Court finds that the state has a rational basis for treating the two groups differently. As a preliminary matter, Petitioner does not appear to contest that protecting the public from sex offenses is a legitimate government interest. (D.E. 3; D.E. 25–36.) In any event, the Third Circuit has held that "[p]rotecting vulnerable individuals from sexual offenses is certainly a legitimate state interest." *See, e.g.*, *Artway*, 81 F.3d at 1267; *Alves*, 2003 WL 27376297, at *6. Instead, Petitioner argues that the classification at issue is not rationally related to the state's interest. In Petitioner's words, the state "arbitrarily selected and classified certain individuals . . . as sexually violent predators, and subject[s] them to civil commitment, but other individuals with qualifying convictions" under the SVPA "are similarly situated [and] not subject to the same process." (D.E. 3, at 6.) According to Petitioner, the SVPA "is discriminatory and has not identified any difference between the two classes: those committed and those not even considered for commitment." (*Id.*) In other words, Petitioner appears to argue that there is no rational reason to treat sex offenders eligible for civil commitment under the SVPA differently from noneligible sex offenders, *i.e.*, those who have been convicted of a relevant sex offense but do not meet the requirements for commitment under the SVPA.

The Court again disagrees. The New Jersey Legislature specifically found that "[c]ertain individuals who commit sex offenses suffer from mental abnormalities or personality disorders which make them likely to engage in repeat acts of predatory sexual violence if not treated for

13

their mental conditions." N.J. Stat. § 30:4-27.25. The legislature reasoned that "[t]he nature of the mental condition from which a sexually violent predator may suffer may not always lend itself to characterization under the existing statutory standard, although civil commitment may nonetheless be warranted due to the danger the person may pose as a result of the [diagnosed] mental condition." N.J. Stat. § 30:4–27.25(b). Thus, the legislature found, "it is necessary to modify the involuntary civil commitment process in recognition of the need for commitment of those sexually violent predators who pose a danger to others should they be returned to society." N.J. Stat. § 30:4–27.25(c).

Based on those findings, this Court concludes that the legislature rationally concluded that sex offenders who suffer from mental conditions that make them likely to commit acts of sexual violence "pose a different degree of risk" than sex offenders that do not suffer from those conditions. *Cf. B.K.*, 2020 WL 5627231, at *7–8. Additionally, the legislature rationally concluded that committing these individuals would serve the state's interest in protecting the public from sex offenses. *See, e.g.*, *Alves*, 2003 WL 27376297, at *6 (finding that classification based on mental illness under the SVPA has "more than a rational relationship" to the state's goals of protecting the public from sex offenses).

As the New Jersey Legislature had a rational basis for treating sex offenders eligible for civil commitment under the SVPA differently from those that are not, Petitioner has not met his burden. Accordingly, even if the challenged groups were similarly situated, the Court would deny Petitioner's equal protection claim for these reasons as well.

### 3. Due Process Claims

Next, the Court observes that Petitioner peppers the word "due process" throughout his claims. (D.E. 3.) Petitioner does not appear, however, to state an independent due process claim.

14

Rather, he seems to be of the impression that his equal protection, bill of attainder, and state law claims also state due process claims. In particular, Petitioner does not appear to raise a procedural due process claim because he does not challenge any procedural aspect of his initial commitment or the safeguards in place to challenge his continued commitment. (D.E. 3; D.E. 21.) At best, Petitioner may be attempting to state a substantive due process claim, as he argues that the distinctions between commitment eligible and non-eligible sex offenders is "arbitrary and capricious." (D.E. 21, at 20–24.) In that case, the SVPA will survive a substantive due process challenge "if the government identifies [a] legitimate state interest that the legislature could rationally conclude was served by the statute." *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006) (internal quotation marks omitted); *Bagarozy v. Goodwin*, No. 08-0468, 2008 WL 4416455, at *10 (D.N.J. Sept. 23, 2008) (addressing the SVPA and substantive due process).

As discussed above, classifying and committing sex offenders based on whether they possess "a mental abnormality or personality disorder that makes them likely to commit acts of sexual violence" bears a rational relationship to the state's interest of protecting the public from sex offenses. N.J. Stat. § 30:4-27.26. Consequently, to the extent Petitioner states independent due process claims, the Court will deny those claims.

### B. Bill of Attainder Claim

Next, Petitioner contends that the SVPA is a bill of attainder that violates Article I, Section 9, Clause 3 of the United States Constitution. (D.E. 3, at 9.) Petitioner uses the terms "bill of attainder," and "bill of pains and penalties," interchangeably throughout his papers. "A bill of attainder is a legislative act which inflicts punishment without a judicial trial. If the punishment be less than death, the act is termed a bill of pains and penalties. Within the meaning of the

Constitution, bills of attainder include bills of pains and penalties." *United States v. Lovett*, 328 U.S. 303, 315 (1946). Consequently, the Court will use the term "bill of attainder" in this discussion.

Under the Bill of Attainder Clause, legislatures may not engage in "[l]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *Artway*, 81 F.3d at 1247 (quoting *United States v. Brown*, 381 U.S. 437, 448–49 (1965)). To determine whether a particular statute is a bill of attainder, courts must inquire "into whether the three definitional elements—specificity in identification, punishment, and lack of a judicial trial—are contained in the statute." *United States v. O'Brien*, 391 U.S. 367, 384 (1968). Whether a statute constitutes punishment is critical, because the Bill of Attainder Clause "only appl[ies] to those situations in which the injury . . . constitutes an imposition or exaction of a 'criminal' rather than a 'civil' nature." *Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 255 (3d Cir. 2001) (quoting *Rex Trailer Co. v. United States*, 350 U.S. 148, 154 (1956)).

In the present case, the state court's decision was not an unreasonable application of clearly established federal law. As discussed above, the state court rejected Petitioner's constitutional challenges, reasoning that the New Jersey Legislature modeled the SVPA after the Kansas SVPA ("K-SVPA"), which was "approved by the Supreme Court." (D.E. 14-21, at 9:4 to 10:21.) The Third Circuit, this Court, and the New Jersey Supreme Court have all determined that commitment under SVPA is not criminal punishment, but rather civil in nature. *See, e.g.*, *Conover v. Main*, 601 F. App'x 112, 113–14 (3d Cir. 2015); *Aruanno v. Hayman*, 384 F. App'x 144, 150 (3d Cir. 2010); *Oliver v. Santiago*, No. 14-1334, 2017 WL 2735409, at *11 (D.N.J. June 23, 2017); *Talbert*

16

v. *Goodwin*, No. 07-4101, 2009 WL 223710, at *7–8 (D.N.J. Jan. 29, 2009); *In re Civ. Commitment of W.X.C.*, 8 A.3d 174, 179 (N.J. 2010).

To arrive at that conclusion, the *Aruanno* Court emphasized that the New Jersey Legislature modeled the SVPA after the K-SVPA and that the Supreme Court upheld the constitutionality of the K-SVPA in *Kansas v. Hendricks*, 521 U.S. 346 (1997). *Aruanno*, 384 F. App'x at 150. The Third Circuit observed that the SVPA, like the K-SVPA, (1) is not part of the state's criminal code; (2) describes its procedure as civil commitment rather than punishment; (3) houses sex offenders separately from the ordinary jail or prison population; (4) mandates treatment tailored to the needs of SVPs; and (5) provides for the reevaluation of commitment every year, with a potential for discharge from commitment. *Id*. at *4–5. For those reasons, the Third Circuit concluded that the SVPA, like the K-SVPA, is civil, rather than criminal in nature. *Id*.

In his papers, Petitioner fails to address whether civil commitment under the SVPA constitutes punishment. (D.E. 3, D.E. 21.) Ultimately, Petitioner offers nothing to rebut the wealth of precedent that has held that the SVPA is civil, rather than criminal in nature, and that it, therefore, does not constitute punishment. Without such a showing, Petitioner cannot meet his burden to show that the SVPA is a bill of attainder. *Myrie*, 267 F.3d at 255 (finding that petitioners must demonstrate that the legislative act in question constitutes punishment to succeed on a bill of attainder claim). Accordingly, the Court will deny habeas relief on this claim.

**C. State Law Claim**

Finally, Petitioner contends that the SVPA is a "Special law that violates" Article IV, Section 7, Paragraph 9, of the New Jersey Constitution. (D.E. 3, at 11.) Petitioner essentially repeats his federal equal protection arguments, alleging that they also demonstrate that the SVPA is a special law that violates the New Jersey Constitution. (D.E. 3, at 11; D.E. 21, 38–39.)

The Special Law Clause of the New Jersey Constitution provides that the "Legislature shall not pass any private, special or local laws," and then lists thirteen categories, such as roads, taxation, and the management of public schools. N.J. Const. Art. IV, § 7, ¶ 9. Instead of addressing the enumerated categories, Petitioner again argues that the SVPA improperly targets sex offenders eligible for civil commitment, and "arbitrarily distinguish[es] between members of a similarly situated class." (D.E. 3, at 11; D.E. 21, 38–39.)

This claim, however, alleges an error of state law, and federal habeas "relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Petitioners may only obtain relief under § 2254 for violations of the Constitution, laws, or treaties of the United States. *McGuire*, 502 U.S. at 68. It "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67–68. Nor can petitioners repackage errors of state law "simply by citing the Due Process Clause," as the Petitioner does in this case. (D.E. 3, at 11.); *Johnson,* 117 F.3d at 110. Accordingly, as Petitioner's claim challenges only an error of state law, this Court will deny habeas relief on this claim.

V.    **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, this Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons discussed above, the Court will deny the Petition and will not issue a certificate of appealability. An appropriate Order follows.

Dated  May 12,          , 2021

JOHN MICHAEL VAZQUEZ
United States District Judge